UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES E. ENGSTROM and RICHARD SHAW, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:23-cv-15792 ) |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, and UNITED AIRLINES, INC. | ) Honorable Matthey F. ) Kennelly ) ) |
| Defendants. | ) ) |

**MOTION TO DISMISS OF**
**DEFENDANT AIR LINE PILOTS ASSOCIATION, INTERNATIONAL**

James K. Lobsenz (*pro hac vice*)
Joshua J. Ellison (*pro hac vice*)
AIR LINE PILOTS ASSOCIATION,
 INTERNATIONAL
Legal Department
7950 Jones Branch Drive, Suite 400S
McLean, VA 22102
Tel.: (703) 481-2423
Fax: (703) 481-2478
*Jim.Lobsenz@alpa.org*
*Joshua.Ellison@alpa.org*

Rami N. Fakhouri
Caleb A. Kennedy
GOLDMAN ISMAIL TOMASELLI
 BRENNAN & BAUM LLP
200 South Wacker Drive
22nd Floor
Chicago, IL 60606
Tel.: (312) 681-6000
Fax: (312) 881-5191
*rfakhouri@goldmanismail.com*
*ckennedy@goldmanismail.com*

*Attorneys for Defendant Air Line Pilots Association, International*

March 8, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

GLOSSARY OF DEFINED TERMS ......................................................................... vii

ALLEGED FACTS ...................................................................................................... 1

    A.    The Parties ............................................................................................... 1

    B.    The CARES Act and LOA 21-02 ........................................................... 1

    C.    United's Vaccine Mandate ...................................................................... 2

    D.    Grievances Concerning the Vaccine Mandate ....................................... 2

    E.    United's Accommodations of Plaintiffs .................................................. 3

ARGUMENT ............................................................................................................... 3

I.       Standards Governing a Rule 12(b)(6) Motion to Dismiss ................................. 3

II.     Plaintiffs Do Not State a Plausible Disparate Treatment Claim Based on
       Religion. .............................................................................................................. 3

    A.    Plaintiffs Do Not Allege Facts Plausibly Suggesting Animus by
         ALPA. ..................................................................................................... 4

    B.    Plaintiffs Do Not Allege a *Prima Facie* Case of Disparate
         Treatment. .............................................................................................. 4

    C.    Plaintiffs Do Not State a Claim for Failure to Accommodate Their
         Religion. ................................................................................................. 5

III.    Plaintiffs Do Not State a Claim for Disparate Treatment Under the ADA or
       FCRA. ................................................................................................................. 7

    A.    Plaintiffs Do Not Plausibly Allege Disparate Treatment. ...................... 7

    B.    Plaintiffs State No Claim that ALPA Failed to Accommodate Their
         Disabilities. ............................................................................................ 8

IV.   No "Failure to Assist" Claim Lies Under Title VII, the ADA, or the FCRA. ..... 9

V.    Plaintiffs Do Not State a Disparate Impact Claim Based on Religion or
       Disability. ............................................................................................................ 9

    A.    Plaintiffs Fail to Identify a Policy or Practice. ....................................... 9

      B.      Plaintiffs Do Not Allege a Disparate Impact. ........................................................10

VI.    Plaintiffs State No Retaliation Claim Under Title VII, the ADA, or the
FCRA. ............................................................................................................................11

VII.   Plaintiffs' State-Law Claims Fail for Additional Reasons. .................................................11

      A.      Federal Labor Law Preempts the FCRA and Tort Claims. ....................................11

      B.      Plaintiffs Do Not State a Claim for IIED. ..............................................................13

      C.      Plaintiffs Do Not State a Claim for Civil Conspiracy. ...........................................13

      D.      Applying the FCRA or Florida Tort Law Would Violate ALPA's
Due Process Rights. ...............................................................................................14

CONCLUSION ............................................................................................................................15

# TABLE OF AUTHORITIES

Page(s):

**Cases:**

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009)........................................................6

*Adams v. City of Indianapolis,* 742 F.3d 720 (7th Cir. 2014)......................................11

*AFA v. Mesa Air Group, Inc.*, 567 F.3d 1043 (9th Cir. 2009)......................................5

*Airline Prof'ls Ass'ns of IBT, Local Union No. 1224 v. ABX Air, Inc.*, 274 F.3d
    1023 (6th Cir. 2001)..............................................................................................5

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) ..............................................6

*Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302 (S.D. Fla. 2014)........................14

*Ali v. IBEW, Loc. 21*, 411 F. App'x 917 (7th Cir. 2011) ............................................11

*Allen v. Unite Here Loc. 1*, 628 F. Supp. 3d 797 (N.D. Ill. 2022)..............................11

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) ................................................12

*ALSSA, Loc. 550 v. Am. Airlines, Inc.*, 490 F.2d 636 (7th Cir. 1973) ........................6

*Arnold v. Heartland Dental, LLC*, 101 F. Supp. 3d 1220 (S.D. Fla. 2015) ................3

*Asarco v. Idaho State Tax Comm'n,* 458 U.S. 307 (1982) ........................................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................3

*Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495 (7th Cir. 1996)..................12

*Babrocky v. Jewel Food Co.*, 773 F.2d 857 (7th Cir.1985) ........................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................3

*Bennett v. Roberts*, 295 F.3d 687 (7th Cir. 2002)......................................................10

*Brode v. Xeris Pharms., Inc.*, 2023 WL 2711770 (N.D. Ill.)........................................8

*Brown v. Alaska Airlines, Inc.*, 642 F. Supp. 3d 1259 (W.D. Wash. 2022) ..............12

*Buford v. Laborers' Int'l Union Loc. 269*, 2019 WL 184052 (N.D. Ill.), *aff'd,* 787
    F. App'x 341 (7th Cir. 2019)..............................................................................4

*Cloutier v. GoJet Airlines, LLC*, 996 F.3d 426 (7th Cir. 2021)..................................10

*Coleman v. Keebler Co.*, 997 F. Supp. 1102 (N.D. Ind. 1998) ......................................................... 7

*Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299 (1987) ................................................ 5

*Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499 (7th Cir. 1998) .................................................. 11

*DeVito v. Chicago Park Dist.*, 83 F.3d 878 (7th Cir. 1996) .............................................................. 7

*Douglas v. Am. Info. Techs. Corp.,* 877 F.2d 565 (7th Cir. 1989) .................................................. 12

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) ..................................................... 6

*EEOC v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656 (7th Cir. 2003) .................................... 9

*Ellis v. United,* 2023 WL 5722887 (N.D. Ill.) ................................................................................... 8

*Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222 (S.D. Fla. 2010). ...................................... 7

*Foster v. Chicago Transit Auth.*, 2015 WL 5693527 (N.D. Ill.) ..................................................... 11

*Freeman v. Loc. Union No. 135*, 746 F.2d 1316 (7th Cir. 1984) ...................................................... 6

*Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F. Supp. 889 (N.D. Ill. 1987) ............................ 14

*Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984) ...................................................................... 14

*Fuqua v. USPS*, 979 F. Supp. 2d 850 (N.D. Ill. 2013) .................................................................... 12

*Garcia v. Goodwill Indus. of S. Fla., Inc.*, 2019 WL 6052814 (S.D. Fla.) ...................................... 7

*Gibbons v. Disney Parks, Experiences, & Prods., Inc.*, No. 6:23-cv-255, slip op.
(M.D. Fla. Feb. 28, 2004) ......................................................................................... 5, 9, 11

*Griffin v. Polk Cnty. Sheriff's Office*, 2009 WL 5171754 (M.D. Fla.) ........................................... 13

*Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385 (11th Cir. 1998) ................................................ 4

*Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836 (7th Cir. 2015) ....................................... 12

*Holly v. Clairson Indus., L.L.C.,* 492 F.3d 1247 (11th Cir. 2007) .................................................... 9

*James v. Hyatt Regency Chicago*, 707 F.3d 775 (7th Cir. 2013) ...................................................... 9

*Kiebala v. Boris,* 2017 WL 4339947 (N.D. Ill.), *aff'd,* 928 F.3d 680 (7th Cir.
2019) ........................................................................................................................................ 13

*Lay v. Roux Labs., Inc.*, 379 So. 2d 451 (Fla. 1st Dist. Ct. App. 1980) ........................................ 13

*Lee v. Chicago Transit Auth.*, 696 F. App'x 752 (7th Cir. 2017) ..................................................... 8

*Leffel v. Valley Fin. Servs.*, 113 F.3d 787 (7th Cir. 1997)................................................................7

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)................................................................4

*Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010)................................................15

*Milsap v. City of Chicago,* 2018 WL 488270 (N.D. Ill.)..................................................................8

*Motley v. IAMAW Dist. Lodge 141*, 768 F. App'x 570 (7th Cir. 2019)..........................................4

*Nehan v. Loc. Union No. 1,* 2015 WL 5722372 (N.D. Ill.)...............................................................4

*Padron v. Wal-Mart Stores, Inc.*, 783 F. Supp. 2d 1042 (N.D. Ill. 2011).....................................10

*Pecha v. Padilla*, 1999 WL 683867 (5th Cir.).................................................................................13

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)..................................................................15

*Podlasek v. Off. of State's Att'y of Cook Cnty.*, 2022 WL 17718412 (N.D. Ill.),
   *dismissed*, 2023 WL 4490354 (7th Cir.) ....................................................................................8

*President v. Ill. Bell Tel. Co.*, 865 F. Supp. 1279 (N.D. Ill. 1994) ..................................................5

*Prince v. Ill. Dep't of Revenue*, 73 F. Supp. 3d 889 (N.D. Ill. 2010) ...........................................11

*Privler v. CSX Transp. Inc.*, 2021 WL 3603334 (N.D.N.Y.)............................................................6

*Pryner v. Tractor Supply Co.*, 109 F.3d 354 (7th Cir. 1997)...........................................................7

*Quinn v. Chicago Transit Auth.*, 2018 WL 4282598 (N.D. Ill.)......................................................8

*Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210 (5th Cir. 1980) .........................................12

*Saadi v. Maroun*, 2008 WL 4194824 (M.D. Fla.)...........................................................................13

*Santillana v. Fla. State Ct. Sys.*, 2010 WL 271433 (M.D. Fla.).....................................................14

*Scolieri v. John Hancock Life Ins. Co. (U.S.A.),* 2017 WL 700215 (M.D. Fla.)............................14

*Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957 (7th Cir. 2010) ...........................................8

*Smith v. City of Jackson, Miss.*, 544 U.S. 228 (2005)....................................................................10

*Sonrai Sys., LLC v. Waste Connections, Inc.*, 658 F. Supp. 3d 604 (N.D. Ill. 2023) ....................14

*Soo Line R.R. v. Overton*, 992 F.2d 640 (7th Cir. 1993) ...............................................................15

*Stephens v. Am. Airlines, Inc.*, 596 F. Supp. 3d 1059 (N.D. Ill. 2022)...........................................5

*Stephens v. Erickson,* 569 F.3d 779 (7th Cir. 2009) ......................................................................11

*Sullivan v. Conway*, 157 F.3d 1092 (7th Cir. 1998) ..................................................13

*Vance v. S. Bell Tel. & Tel. Co.*, 983 F.2d 1573 (11th Cir.1993) ...................................13

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429 (7th Cir. 1993)..............................2

*Vitug v. Multistate Tax Comm'n*, 88 F.3d 506 (7th Cir. 1996)........................................10

*Von Behren v. Plainfield Cmty. Consol. Sch. Dist. 202*, 2014 WL 6819538 (N.D. Ill.)....................................................................11

*Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977 (1988) ...............................................10

*Wicik v. Cnty. of Cook*, 2018 WL 1453555 (N.D. Ill.) ...............................................9

*Wickstrom v. ALPA*, 2023 WL 5720989 (N.D. Ill.)................................................4, 13

*Wooten v. Acme Steel Co.*, 986 F. Supp. 524 (N.D. Ill. 1997).....................................7, 9

*Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998)....................................10

*Young v. Miami-Dade Cnty.*, 2020 WL 2110012 (S.D. Fla.).........................................14

**Statutes, Rules & Regulations:**

42 U.S.C. § 12102 (1) .............................................................................8

42 U.S.C. § 12112 ...................................................................................7

42 U.S.C. § 2000e (j) .............................................................................6

42 U.S.C. § 2000e-2...............................................................................3, 9

Fed. R. Civ. P. 8(a)(2) .........................................................................3

Fed. R. Civ. P. 12(b)(6) ........................................................................3

29 C.F.R. § 1605.2 (c)(1) ........................................................................6

29 C.F.R. § 1605.2(d)(2) .........................................................................6

## GLOSSARY OF DEFINED TERMS

ALPA — Defendant Air Line Pilots Association, International and, collectively, ALPA and the United MEC

CBA — Collective Bargaining Agreement

Compl. — Complaint, Dkt. No. 1 (filed November 16, 2022)

DFR — Duty of Fair Representation

FCRA — Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq*.

FDA — Food and Drug Administration

GRP — United MEC's Grievance Review Panel

IIED — Intentional infliction of emotional distress

LOA 21-02 — Letter of Agreement between ALPA and United ("COVID Vaccinations"), dated May 25, 2021

RAP — United's Reasonable Accommodation Process for Vaccine Objectors

RLA — Railway Labor Act, 45 U.S.C. §§ 151-188

SAC — Second Amended Complaint, Dkt. No. 71 (filed Jan. 30, 2024)

Status Quo Grievances — Grievances filed by groups of individual pilots alleging that United's vaccine mandate violated UPA, LOA 21-02, and/or RLA

United — Defendant United Airlines, Inc.

United MEC — United pilots' Master Executive Council, ALPA's highest local coordinating body for the United pilots

UPA — United Pilots Agreement, the collective bargaining agreement between United and ALPA

Two pilot-Plaintiffs assert that their union (ALPA) violated federal and Florida anti-discrimination law by: (1) not suing or supporting grievances to enjoin United Airlines' vaccine mandate as violating the RLA or the United Pilots' Agreement; (2) not seeking better accommodations for their medical and religious objections to vaccination; (3) agreeing to, and not grieving United's violations of, Letter of Agreement 21-02 concerning vaccination incentives; and (4) causing disparate impact on, and retaliating against, them. They also make state common-law claims.

The SAC states no plausible claim and should be dismissed pursuant to Rule 12(b)(6). First, ALPA had no duty to Plaintiffs in their individual statutory claims against United. Second, far from showing animus to religion or disability or differing treatment of Plaintiffs and similarly situated pilots, the SAC admits that ALPA sought to maintain federal funding of United to avoid pilot layoffs and acted based on its view of its legal duties for individual statutory claims. Third, Plaintiffs do not identify a disability hindering a major life activity or show that ALPA disfavored them on that basis. Fourth, the SAC cites no protected activity supporting the retaliation claims. Fifth, the disparate impact claims identify no required ALPA policy or practice and plead no facts showing differing treatment based on religious beliefs or medical conditions. Finally, Plaintiffs' state-law claims are meritless, preempted by federal law, and rely on inapplicable law.

## ALLEGED FACTS

### A.     The Parties

United is an airline; Plaintiffs are United pilots; ALPA is their union. SAC ¶¶ 9-12, 20-23.

### B.     The CARES Act and LOA 21-02

In 2020, United received funding through the CARES Act, which barred layoffs, furloughs, and pay reductions until September 2021 or the funds ran out. *Id.* ¶¶ 87, 97. ALPA supported this funding and United's COVID-19 initiatives to maintain it. *Id.* ¶ 89.

At all relevant times, ALPA and United operated under the "lapsed" UPA. *Id.* ¶ 90. In May 2021, ALPA and United signed LOA 21-02, which provided incentives for pilot vaccination and addressed scheduling issues arising from vaccine mandates in some United destinations. *Id.* ¶ 97. Plaintiffs assert that ALPA wrongly did not have members ratify the LOA and that unvaccinated pilots lost pay because they could not fly to those destinations. *Id.* ¶¶ 97-100.

### C.      United's Vaccine Mandate

In August 2021, United announced that pilots and other employees had to be vaccinated against COVID-19 and created a Reasonable Accommodation Process ("RAP") for objectors. *Id.* ¶¶ 102-05. Asserting that the mandate violated the UPA's and RLA's "status quo" provisions, Plaintiffs complain that ALPA did not: (1) challenge it; (2) represent pilots in the RAP; (3) oppose United's inquiries into pilots' religious practices or its postcards disclosing pilots' vaccination status; or (4) support grievances protesting the mandate or LOA 21-02 violations. *Id.* ¶¶ 98-99, 102-11, 113-15, 121-24; 45 U.S.C. § 156.

### D.      Grievances Concerning the Vaccine Mandate

**"Status Quo" Grievances.** Without ALPA's support, pilots filed, and United denied, individual grievances challenging the vaccine mandate. SAC ¶¶ 110, 115, 117, 125. Those pilots requested that ALPA's United Master Executive Council arbitrate United's denials. *Id.* ¶ 125. On March 11, 2022, the MEC's Grievance Review Panel declined, explaining that:

- The UPA did not address vaccination but explicitly provided (in Section 21-K) that United may change "personnel policies upon notice to ALPA, even though ALPA does not have to agree beforehand to any such changes," App. 72;
- United had also mandated Yellow Fever vaccination for pilots under that authority, *id.*; and
- Courts have uniformly rejected claims that carrier vaccination requirements violated the RLA's status quo obligation, *id.* at 71.[1]

---

[1] The documents in the attached Appendix are integral to the SAC and authentic and may be considered. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

**The MEC Grievance.** On September 28, 2021 (the day after United's mandate became effective), ALPA filed the MEC Grievance asserting that United's discharge of unvaccinated pilots would violate the UPA because vaccination was a pilot qualification and not a disciplinary matter. SAC ¶ 118. After United denied the Grievance, ALPA appealed, but the ALPA-United arbitral System Board of Adjustment denied the Grievance in February 2022. *Id.* ¶ 126.

### E. United's Accommodations of Plaintiffs

United placed approved RAP pilots on unpaid leave in November 2021. *Id.* ¶ 123. United granted Plaintiff Shaw's medical accommodation and both Plaintiffs' religious accommodations but denied a medical accommodation to Plaintiff Engstrom. *Id.* ¶¶ 133, 137, 141, 167.

## ARGUMENT

## I. Standards Governing a Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) requires the Court to view the SAC in the light most favorable to Plaintiffs and assume specific factual allegations are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But allegations that are "no more than conclusions [] are not entitled to the assumption of truth," and even factual allegations must "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 681 (2009). A "plausible" claim requires more than the "sheer possibility" or "conceiv[ability]" of unlawful conduct. *Id.* at 678; *Twombly*, 550 U.S. at 570. Absent such plausibility, the FAC must be dismissed because it "has alleged – but it has not 'show[n]'" entitlement to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## II. Plaintiffs Do Not State a Plausible Disparate Treatment Claim Based on Religion.

Title VII and the FCRA bar the following union acts based on individuals' religions: "exclud[ing] or expel[ling]" them; "limit[ing], segregat[ing] or classify[ing]" them to adversely affect their status; and "caus[ing] or attempt[ing] to cause an employer to discriminate." 42 U.S.C. § 2000e-2; *Arnold v. Heartland Dental, LLC*, 101 F. Supp. 3d 1220, 1225 (S.D. Fla.

3

2015); *accord Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Plaintiffs plead "direct" discrimination by either alleging facts suggesting overt animus to a protected status or a *prima facie* case under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Motley v. IAMAW Dist. Lodge 141*, 768 F. App'x 570, 572 (7th Cir. 2019). The latter requires a plaintiff to allege that "(1) he is a member of a protected class…([2]) he suffered an adverse employment action; and ([3]) similarly situated employees outside of the protected class received more favorable treatment." *Nehan v. Loc. Union No. 1,* 2015 WL 5722372, at *5 (N.D. Ill.); *Buford v. Laborers' Int'l Union Loc. 269*, 2019 WL 184052, at *8 (N.D. Ill.), *aff'd,* 787 F. App'x 341 (7th Cir. 2019).

### A.     Plaintiffs Do Not Allege Facts Plausibly Suggesting Animus by ALPA.

Plaintiffs do not plausibly allege discrimination. The SAC's only suggestion of "direct" evidence of discrimination is that, in May 2021, then-MEC Chair Todd Insler allegedly told a pilot questioning the vaccine's emergency use authorization to "get [the] shot[,] collect $4K[, and] STFU." SAC ¶ 101. But the alleged issue was vaccine safety and other pilots' health, not discrimination, and Plaintiffs cite nothing connecting the alleged statement to their religious beliefs. *See Wickstrom v. ALPA*, 2023 WL 5720989, *6 (N.D. Ill.) (same comment does not plausibly show "that, in declining to pursue a grievance challenging the claimed status quo violation, ALPA acted on the basis of hostility toward vaccine objectors").

### B.     Plaintiffs Do Not Allege a *Prima Facie* Case of Disparate Treatment.

Plaintiffs also do not plausibly allege a *prima facie* case under *McDonnell-Douglas* that anti-religious animus prompted ALPA's refusal to support a lawsuit and grievances over the vaccine mandate, RAP, LOA 21-02, and United's postcards. They do not claim that ALPA supported similar grievances by unvaccinated pilots lacking their religious beliefs or disabilities. Rather, they allege that ALPA acted to support United's efforts to obtain CARES Act funding and

admit that the CARES Act and later statutes barred pilot layoffs as a condition of receiving funds – a legitimate non-discriminatory reason for ALPA's actions. SAC ¶ 87.

Further, far from a pretext for anti-religious or disability animus, ALPA's legal positions over a status quo lawsuit or grievance were correct. An injunction suit would have failed because United had at least an arguable basis under the UPA for its mandate. *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 307, 312, 320 (1987); *Stephens v. Am. Airlines, Inc.*, 596 F. Supp. 3d 1059, 1061 (N.D. Ill. 2022); *see AFA v. Mesa Air Group, Inc.*, 567 F.3d 1043, 1049-50 (9th Cir. 2009) (no injunction against employer's alleged status quo violation during bargaining because employer had arguable contractual basis for its action); *Airline Prof'ls Ass'ns of IBT, Loc. Union No. 1224 v. ABX Air, Inc.*, 274 F.3d 1023, 1029 (6th Cir. 2001) (similar). With respect to grievances, the SAC fails to identify any provision of the UPA or LOA 21-02 breached by the vaccine mandate, postcards, or RAP. Absent such language, ALPA had no ability to stop United's actions. *President v. Ill. Bell Tel. Co.*, 865 F. Supp. 1279, 1291 (N.D. Ill. 1994) (Title VII claim based on failure to represent requires DFR breach and animus) (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 868 (7th Cir.1985)).

Finally, Plaintiffs' claim that LOA 21-02 violated Title VII and the FCRA fares no better. While they bemoan the LOA's "two-tier system limiting compensation for unvaccinated pilots" and lack of member ratification (SAC ¶¶ 92, 97-100), they do not claim that the LOA provided better treatment to unvaccinated pilots lacking religious or medical objections or that any pilot (vaccinated or not) could vote on it. *See Gibbons v. Disney Parks, Experiences, & Prods., Inc.*, No. 6:23-cv-255, slip op. at 13 (M.D. Fla. Feb. 28, 2004) (*see* App. 85). They thus do not plausibly allege disparate treatment.

**C.      Plaintiffs Do Not State a Claim for Failure to Accommodate Their Religion.**

Plaintiffs assert that ALPA failed to accommodate their religious beliefs.[2] Religious accommodation law applies primarily to employers, not unions. *See* 42 U.S.C. § 2000e (j) (defining "religion" as "employer" (not union) being "unable to reasonably accommodate" employee's "religious observance or practice without undue hardship" on employer's business). Thus, EEOC regulations concerning union religious accommodations apply only where the union can offer the desired accommodation. *See* 29 C.F.R. § 1605.2 (c)(1) ("After an employee or prospective employee notifies the employer or labor organization of his or her need for a religious accommodation, the employer or labor organization has an obligation to reasonably accommodate the individual's religious practices"); 29 C.F.R. § 1605.2(d)(2) (religious objection to paying agency fees to union accommodated by permitting donation to charity).

Plaintiffs' claim is implausible. They apparently desired an accommodation allowing them to fly unvaccinated or paying them not to fly, but they do not assert that ALPA could offer that accommodation or that they even identified their religious beliefs to ALPA. Further, ALPA had no duty to affirmatively obtain accommodations based on their Title VII and ADA rights because it was not the exclusive representative for them. Individuals enforce such statutory rights; unions do not bargain to obtain them and typically do not enforce them in the grievance process. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49-52 (1974); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 262, 273 (2009); *Freeman v. Loc. Union No. 135*, 746 F.2d 1316, 1321 (7th Cir. 1984) (union has no DFR where it "does not serve as the exclusive agent" of bargaining unit members); *ALSSA, Loc. 550 v. Am. Airlines, Inc.*, 490 F.2d 636, 640-42 (7th Cir. 1973) (union's conflicting interests barred service as class representative for Title VII claims and noting unions'

---

[2] Such claims are a type of disparate treatment, not an independent legal claim. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 789 (2015) (Thomas, J., concurring in part); *Privler v. CSX Transp. Inc.*, 2021 WL 3603334, at *12 n.10 (N.D.N.Y.).

lack of authority to compromise members' individual statutory claims); *see also Pryner v. Tractor Supply Co.*, 109 F.3d 354, 362 (7th Cir. 1997) (distinguishing between rights under CBA and anti-discrimination statutes); *Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1118 (N.D. Ind. 1998) (union is "insufficient proxy" for enforcing ADA rights, "including engaging in the interactive process[,]" because "ADA grants individuals substantive statutory rights").

## III. Plaintiffs Do Not State a Claim for Disparate Treatment Under the ADA or FCRA.

The ADA prohibits unions from:

> (1) limiting, segregating, or classifying a[n] … employee in a way that adversely affects the opportunities or status of such … employee because of the disability of such … employee[;]" [and (2)] not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an … employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity. [42 U.S.C. §§ 12112 (b)(1, 5).]

ADA claims may rely on theories of "disparate treatment" or failure to make "reasonable accommodations." *Wooten v. Acme Steel Co.,* 986 F. Supp. 524, 527 (N.D. Ill. 1997). "Disparate treatment involves discriminatory intent and occurs when a disabled person is singled out for disadvantage because of [his] disability." *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010). The disability must motivate the employment decision. *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 793 (7th Cir. 1997); *DeVito v. Chicago Park Dist.*, 83 F.3d 878, 882 (7th Cir. 1996). In contrast, a reasonable accommodation claim arises "when a covered entity breaches its affirmative duty" to accommodate a disability. *Forbes*, 768 F. Supp. 2d at 1227. Failure to state an ADA claim bars Florida statutory disability discrimination claims. *Garcia v. Goodwill Indus. of S. Fla., Inc.*, 2019 WL 6052814, at *2 (S.D. Fla.).

### A. Plaintiffs Do Not Plausibly Allege Disparate Treatment.

ADA disparate treatment claimants must show: (1) "a disability," defined as "(A) a physical or mental impairment that substantially limits one or more [of their] major life activities

…; (B) a record of such an impairment; or (C) being regarded as having such an impairment." (42 U.S.C. § 12102 (1)); (2) qualification to perform the job with or without a reasonable accommodation; and (3) "an adverse employment action because of [their] disability." *Lee v. Chicago Transit Auth.*, 696 F. App'x 752, 753 (7th Cir. 2017). Plaintiffs fail this test.

**First**, they do not plausibly allege a disability, instead offering vague, boilerplate recitations of statutory language that baldly assert that they "qualified for an exemption" from vaccination due to an unspecified "medical condition" or "disability." SAC ¶¶ 133, 165, 169; *see Quinn v. Chicago Transit Auth.*, 2018 WL 4282598, at *7 n.3 (N.D. Ill.). Moreover, Plaintiffs' unvaccinated status is not a disability. A perception of them "as having a higher risk of contracting COVID-19 in the future due to [their] unvaccinated status does not allege a disability under the ADA." *Ellis v. United,* 2023 WL 5722887, at *2 (N.D. Ill.) (collecting cases).

**Second**, Plaintiffs do not plausibly allege that ALPA discriminated against them "because of" disability. *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010) ("but for" causation required); *Brode v. Xeris Pharms., Inc.*, 2023 WL 2711770, at *5 (N.D. Ill.) (same); *Milsap v. City of Chicago,* 2018 WL 488270, at *6 (N.D. Ill.) (same); *cf. Podlasek v. Off. of State's Att'y of Cook Cnty.*, 2022 WL 17718412, at *7 (N.D. Ill.) ("motivating factor" standard), *dismissed*, 2023 WL 4490354 (7th Cir.). To the contrary, they allege motives unrelated to their "disability": ALPA's legal analysis of the UPA, its lack of role in pilots' statutory claims, and its desire that United obtain federal funding to avoid pilot layoffs. *Supra* § II.C.

**B.  Plaintiffs State No Claim that ALPA Failed to Accommodate Their Disabilities.**

Plaintiffs' ADA accommodation claim must allege that they: (1) are "disabled" as defined above; (2) are qualified to perform the job with or without a specified reasonable accommodation; and (3) "suffered an adverse employment action because of [their] disability."

*Wooten*, 986 F. Supp. at 528 (quotations omitted); *Wicik v. Cnty. of Cook*, 2018 WL 1453555, at *6 (N.D. Ill.) (citing *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013)).

Plaintiffs fail this test. They do not identify any disability. *Supra* § III.A. Moreover, unions are not liable for employer failures to accommodate disabilities because employers, not unions, make such accommodations. *See EEOC v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 659-61 (7th Cir. 2003). As Plaintiffs allege nothing suggesting ALPA played any role in the RAP, they do not state a reasonable accommodation claim against ALPA.

## IV.     No "Failure to Assist" Claim Lies Under Title VII, the ADA, or the FCRA.

Any claim that ALPA discriminated by not assisting Plaintiffs to challenge the vaccine mandate would fail. Unions are liable only if they "cause or attempt to cause an employer to discriminate[,]" not because they do not contest an employer's discrimination. 42 U.S.C. § 2000e-2(c)(3). If a union "merely fails to effectuate changes in the workplace [to redress the employer's discriminatory conduct] … the union is not guilty of discrimination, though the company is." *Pipefitters*, 334 F.3d at 659-61. This is because a "union's power is so much more limited than the employer's when it comes to making changes in personnel or work rules." *Id.* at 660-61. *See also supra* § II.C (no union duty to pursue individuals' statutory claims).

## V.     Plaintiffs Do Not State a Disparate Impact Claim Based on Religion or Disability.

Plaintiffs also assert disparate impact claims under Title VII, the ADA and the FCRA. SAC ¶¶ 296-306, 328-36, 369-78, 410-18. Such claims are analyzed together. *Holly v. Clairson Indus., L.L.C.,* 492 F.3d 1247, 1255 (11th Cir. 2007); *Gibbons*, slip op. at 26 n.15 (App. 98). Plaintiffs' claims fail because they do not identify a specific policy or practice or plausibly allege a disparate impact.

### A.     Plaintiffs Fail to Identify a Policy or Practice.

Plaintiffs' disparate impact claim must "identify a facially-neutral policy or practice that disproportionally impacted" members of their protected class. *Padron v. Wal-Mart Stores, Inc.*, 783 F. Supp. 2d 1042, 1049 (N.D. Ill. 2011). They must "isolate and identify 'the specific employment practices that are allegedly responsible for any observed statistical disparities.'" *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir. 1996) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994 (1988)). As the Supreme Court has stated:

> It is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is "'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" [*Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005) (emphasis in original) (citation omitted).]

Plaintiffs allege no such policy. They cite only ALPA's statements (to a court and United pilots) that the RAP was outside the UPA and a matter between individual pilots and United. Those were legal judgments, not policies or practices. "Isolated and singular incidents generally are insufficient to constitute a specific employment practice." *Bennett v. Roberts*, 295 F.3d 687, 698 (7th Cir. 2002). Moreover, they were correct because the UPA does not mention disability or incorporate Title VII, the ADA, or the FCRA, and ALPA had no DFR to Plaintiffs for their statutory claims. App. 2 (¶ 2), 7 (UPA § 21-G); *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 79 (1998) (no required arbitration of statutory claim where CBA stated parties' intent not to "violat[e] any Federal or State Law")(quotations omitted); *Cloutier v. GoJet Airlines, LLC*, 996 F.3d 426, 436-37 (7th Cir. 2021) (no required arbitration of FMLA claim where CBA required employer to "grant family and medical leaves in accordance with applicable law") (quotations omitted); *supra* § II.C.

### B.     Plaintiffs Do Not Allege a Disparate Impact.

While detailed statistics are not required at the pleadings stage, Plaintiffs still must present "'some basic allegations' that the challenged practice or policy caused a 'statistically

significant' imbalance between members of the protected group and other employees." *Von Behren v. Plainfield Cmty. Consol. Sch. Dist. 202*, 2014 WL 6819538, at *5 (N.D. Ill.) (quoting *Adams v. City of Indianapolis,* 742 F.3d 720, 733 (7th Cir. 2014)). Plaintiffs offer nothing.

## VI. Plaintiffs State No Retaliation Claim Under Title VII, the ADA, or the FCRA.

Nor do Plaintiffs plausibly allege retaliation by ALPA under Title VII, the ADA, or the FCRA (if such claims even lie against unions in this circuit). *Ali v. IBEW, Loc. 21*, 411 F. App'x 917, 918 (7th Cir. 2011); *Allen v. Unite Here Loc. 1*, 628 F. Supp. 3d 797, 812 (N.D. Ill. 2022). They must allege: (1) they engaged in protected activity; (2) they suffered an adverse action; and (3) a causal connection between the activity and the adverse action. *Foster v. Chicago Transit Auth.*, 2015 WL 5693527, at *3 (N.D. Ill.) (citing *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009). Courts analyze retaliation claims similarly under Title VII and the ADA. *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 511 (7th Cir. 1998); *Prince v. Ill. Dep't of Revenue*, 73 F. Supp. 3d 889, 894 (N.D. Ill. 2010).

Plaintiffs fail to plead a protected activity. Their only such activity − filing EEOC charges in January 2022 − occurred *after* their placement on leave in November 2021 and *after* ALPA decided not to challenge the RAP. *See* SAC ¶¶ 111, 113-22, 123, 137, 167-68, 194-95. ALPA obviously could not retaliate based on an event that occurred months later. *Gibbons*, slip op. at 22 n.12 (App. 94).[3]

## VII. Plaintiffs' State-Law Claims Fail for Additional Reasons.

### A. Federal Labor Law Preempts the FCRA and Tort Claims.

---

[3] Any claim that the GRP's refusal to submit the Status Quo Grievances to the System Board retaliated against Plaintiffs would fail because they do not allege that any GRP member was aware of their charges and offer nothing showing that the GRP's decision was incorrect, and nothing in the GRP's decision even hints at retaliation.

Federal law preempts Plaintiffs' FCRA, IIED, and civil conspiracy claims in three ways: federal labor law reserving interpretation of CBAs to the grievance process ("contract preemption"); the DFR governs unions' duties to represented employees; and questions of internal union governance are reserved to federal law.

"[Q]uestions relating to what the parties to a [CBA] agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). Therefore, state-law claims are preempted where they are "substantially dependent on analysis of a [CBA]," which arises even when a CBA's "explicit terms" are not at issue or the state-law claims only "indirectly implicate" a CBA. *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 498-99 (7th Cir. 1996) (quotations omitted); *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 841 (7th Cir. 2015). Plaintiffs' claims plainly are subject to "contract preemption." They allege that United's conduct breached the UPA and LOA 21-02, which necessarily requires interpreting and applying those agreements. SAC ¶¶ 98-100, 114; *see Douglas v. Am. Info. Techs. Corp.*, 877 F.2d 565, 573 (7th Cir. 1989) (IIED claim preempted).

The federal DFR likewise preempts Plaintiffs' state-law claims. The DFR displaces "state law claims brought by members of unions arising out of the union's representation of them in disputes with employers" or that may impose additional or conflicting DFR duties on a union. *Fuqua v. USPS*, 979 F. Supp. 2d 850, 859 (N.D. Ill. 2013); *Brown v. Alaska Airlines, Inc.*, 642 F. Supp. 3d 1259, 1263 (W.D. Wash. 2022). Here, Plaintiffs' state-law claims attempt to expand ALPA's DFR beyond its established area where it serves as the "exclusive" representative of pilots and interfere with ALPA's judgment on which grievances to pursue. *Supra* § II.C; *Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210, 1213 (5th Cir. 1980) (IIED claim based on alleged

employer-union conspiracy dismissed because "[t]he alleged discriminatory treatment accorded plaintiffs is precisely the type of conduct the federal labor laws intended to prohibit"); *Wickstrom*, 2023 WL 5720989, *5.

Finally, federal law preempts Plaintiffs' claims that ALPA violated its internal policies concerning member ratification of LOA 21-02. *Sullivan v. Conway*, 157 F.3d 1092, 1099 (7th Cir. 1998) (defamation law preempted "when applied in ways that interfere with the internal management of unions"); *Pecha v. Padilla*, 1999 WL 683867, at *2-3 (5th Cir.) (DFR preempted state law claims concerning "whether a union officer followed the union's internal procedures").

### B.      Plaintiffs Do Not State a Claim for IIED.

"To establish a claim for [IIED], Plaintiffs must allege 'conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Saadi v. Maroun*, 2008 WL 4194824, at *4 (M.D. Fla.) (quotations omitted); *accord Douglas,* 877 F.2d at 570-71. "[W]hether a person's conduct is sufficiently outrageous and intolerable as to form the basis for a claim of [IIED] is a *matter of law for the court,* not a question of fact." *Griffin v. Polk Cnty. Sheriff's Office*, 2009 WL 5171754, at *2 (M.D. Fla.) (quotations omitted); *accord Kiebala v. Boris,* 2017 WL 4339947, at *6 (N.D. Ill.), *aff'd,* 928 F.3d 680 (7th Cir. 2019).

The SAC falls far short of this high bar. *Compare Vance v. S. Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1574 n.2, 1575 n.7 (11th Cir.1993) (allegations of hanging rope noose over black plaintiff's work station, racially discriminatory suspension, sabotaging work, intention transport to the wrong hospital during nervous breakdown, and constructive discharge do not state IIED claim); *Lay v. Roux Labs., Inc.*, 379 So. 2d 451, 452 (Fla. 1st Dist. Ct. App. 1980) ("extremely reprehensible" racial slurs, abuse, and threats not sufficiently outrageous).

### C.      Plaintiffs Do Not State a Claim for Civil Conspiracy.

"A civil conspiracy requires: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy." *Santillana v. Fla. State Ct. Sys.*, 2010 WL 271433, at *13 (M.D. Fla.); *Sonrai Sys., LLC v. Waste Connections, Inc.*, 658 F. Supp. 3d 604, 612 (N.D. Ill. 2023). Such claims require "more than mere conclusory notice pleading" and must state "the nature of the conspiracy[.]" *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984); *Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F. Supp. 889, 895-96 (N.D. Ill. 1987).

Plaintiffs do not adequately allege a conspiracy. Their claim that Defendants United and ALPA "fail[ed] to engage in required bargaining" over United's vaccine mandate does not allege an "agreement" because "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014) (quotations omitted). Their claim that Defendants "agreed that ALPA would not assist pilots with grievances" is conclusory and ignores that ALPA filed and arbitrated the MEC Grievance. *Young v. Miami-Dade Cnty.*, 2020 WL 2110012, at *11 (S.D. Fla.) (dismissing conspiracy claim as "Plaintiff alleges no facts Defendants reached an agreement"). Plaintiffs also do not allege the requisite underlying unlawful act because they do not state a claim that ALPA violated Title VII, the ADA, or the FCRA. *See Scolieri v. John Hancock Life Ins. Co. (U.S.A.),* 2017 WL 700215, at *6 (M.D. Fla.); *Alhassid*, 60 F. Supp. at 1325; *Sonrai*, 658 F. Supp. 3d at 613.

### D.    Applying the FCRA or Florida Tort Law Would Violate ALPA's Due Process Rights.

Plaintiffs' FCRA and Florida IIED and civil conspiracy claims must be dismissed because they are unrelated to Florida. For Florida law to apply without violating the Fourteenth Amendment's due process clause, Florida "must have a 'significant contact or significant

14

aggregation of contacts to the claims asserted'" by Plaintiffs to prevent unfairness or arbitrariness. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (quotations omitted); *Soo Line R.R. v. Overton*, 992 F.2d 640, 644 (7th Cir. 1993); *see Asarco v. Idaho State Tax Comm'n,* 458 U.S. 307, 317-18 (1982) (state lacked constitutional power to tax revenue derived from out-of-state activities); *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 668 (7th Cir. 2010).

Plaintiffs fail this test. In transferring this case to this Court, Judge Berger found that "Plaintiffs are not employed in" Florida and do not allege that their presence in Florida is "in any way connected to their employment." Dkt. # 53 at 6. Plaintiffs similarly do not allege that ALPA represented them in Florida. In short, no contacts exist in Florida between ALPA and its challenged conduct. Accordingly, ALPA cannot be subject to Florida law in this case.

## CONCLUSION

For the reasons stated above, the SAC's claims against ALPA should be dismissed.

Dated: March 8, 2024                                Respectfully submitted,

                                                    By: */s/ Rami N. Fakhouri*

James K. Lobsenz (*pro hac vice*)                   Rami N. Fakhouri
Joshua J. Ellison (*pro hac vice*)                  Caleb A. Kennedy
AIR LINE PILOTS ASSOCIATION,                        GOLDMAN ISMAIL TOMASELLI
  INTERNATIONAL                                       BRENNAN & BAUM LLP
Legal Department                                    200 South Wacker Drive
7950 Jones Branch Drive, Suite 400S                 22nd Floor
McLean, VA 22102                                     Chicago, IL 60606
Tel.: (703) 481-2423                                Tel.: (312) 681-6000
Fax: (703) 481-2478                                 Fax: (312) 881-5191
*Jim.Lobsenz@alpa.org*                              *rfakhouri@goldmanismail.com*
*Joshua.Ellison@alpa.org*                           *ckennedy@goldmanismail.com*

*Attorneys for Defendant Air Line Pilots Association, International*