**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES E. ENGSTROM and RICHARD SHAW, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 23 C 15792 |
| | ) | |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL and UNITED AIRLINES, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiffs James Engstrom and Richard Shaw have moved for leave to file a third amended complaint in their suit against defendants Air Line Pilots Association, International and United Airlines, Inc. For the reasons stated below, the Court denies plaintiffs' motion and directs the Clerk to enter judgment against them.

**Background**

James Engstrom and Richard Shaw are pilots employed by United Airlines. They filed suit in November 2022 against their labor union, the Air Line Pilots Association (ALPA), and the United Airlines Master Executive Council (MEC), an ALPA chapter that deals with United employees. Plaintiffs asserted various discrimination-related claims arising from United's COVID-19 vaccination policies. Plaintiffs filed their suit in the Middle District of Florida. They amended their complaint in April 2023, this time naming ALPA and United, but not the MEC.

In their first amended complaint (FAC), plaintiffs asserted numerous claims. They alleged violations of the Florida Civil Rights Act (FCRA) regarding United and, separately, ALPA based on the following contentions:  disparate treatment and failure to accommodate on the basis of religion, disparate treatment and failure to accommodate on the basis of handicap, disparate impact, and retaliation.  The plaintiffs also asserted against ALPA claims under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (ADA) for disparate treatment, failure to accommodate, retaliation, and disparate impact.  Finally, the plaintiffs alleged that United and ALPA were liable for intentional infliction of emotional distress and civil conspiracy.

The defendants moved to dismiss and also moved to transfer the case to this district.  The Florida court did not address the motion to dismiss but transferred the case here in November 2023.  On January 30, 2024, the Court gave plaintiffs leave to file a second amended complaint (SAC), in which they asserted claims under the FCRA, the ADA, Title VII of the Civil Rights Act of 1964, and common law.  The only claims against United were FCRA claims; the plaintiffs did not assert any federal-law claims against United, but instead only against ALPA.

In August 2024, this Court dismissed all of the claims in the second amended complaint, some on the merits and some for inadequate pleading.  Specifically, the Court:  (1) dismissed all of the plaintiffs' FCRA claims against United on the merits after concluding the statute did not apply extraterritorially to United; (2) dismissed the FCRA and ADA discrimination, retaliation, and disparate impact claims against ALPA because the plaintiffs had not plausibly alleged any disability; (3) dismissed the ADA retaliation claim against ALPA due to the lack of an allegation of any action taken against them in

response to their alleged protected activity; (4) dismissed the Title VII religious

discrimination claims against ALPA due to the lack of a plausible allegation of purposeful

religious-based discrimination by ALPA; (5) dismissed the Title VII religious

accommodation claims against ALPA due to the lack of any allegation that they sought

an accommodation from ALPA; (6) dismissed the Title VII religious disparate impact

claims against ALPA due to the lack of any allegation of a policy or practice of ALPA that

caused a disparate impact and because they had not identified any relevant disparity as

compared with employees in an unprotected class; and (7) dismissed the FCRA and

Title VII retaliation claims against ALPA due to the lack of a plausible allegation of a

causal connection between protected activity and action taken against them by ALPA.

*See Engstrom v. Air Line Pilots Ass'n*, No. 23 C 15792, 2024 WL 3848512, at *2–11

(N.D. Ill. Aug. 16, 2024).  The Court also dismissed the plaintiffs' common law claims on

various grounds.  *Id.* at *11–12.

The Court's dismissal order, dated August 16, 2024, stated that unless plaintiffs

filed by August 26 "a motion for leave to amend that attaches a proposed amended

complaint stating at least one viable claim over which the Court has jurisdiction, the

Court will enter judgment in favor of the defendants."  *Id.* at *12.  On August 26, plaintiffs

filed a motion for leave to file a third amended complaint.  This version names only

United as a defendant—dropping ALPA—and it asserts only Title VII religious-based

discrimination and accommodation claims.  United has objected to plaintiffs' motion,

arguing on various grounds that the proposed amendments would be futile.

## Discussion

A district court should freely grant leave to amend a complaint "when justice so

requires," Fed. R. Civ. P. 15(a), "[u]nless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). An amendment is futile if it "restat[es] the same facts using different language, reassert[s] claims previously determined, fail[s] to state a valid theory of liability, and [is unable] to survive a motion to dismiss." *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994) (internal citations omitted). Accordingly, a district court should deny leave to amend when the proposed amendments do not "push the original claim into the realm of plausibility." *O'Boyle v. Real Time Resols., Inc.*, 910 F.3d 338, 348 (7th Cir. 2018). A district court may also deny leave to amend if "there is a good reason—futility, undue delay, undue prejudice, or bad faith." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 358 (7th Cir. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

To be facially plausible, a complaint must allege factual allegations sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Though "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" do not suffice. *Twombly*, 550 U.S. at 555.

## A.    Relation back

As indicated earlier, the previous versions of plaintiffs' complaint did not include any Title VII or other federal claims against United. United contends that plaintiffs' newly-pleaded Title VII claims are time-barred because plaintiffs did not assert them in a timely fashion after receiving notice of right to sue from the EEOC. In response,

4

plaintiffs contend that these claims should relate back to the date(s) of their earlier complaints under Federal Rule of Civil Procedure 15(c). *See* Mot. for Leave to File Am. Compl. at 6. "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). If Rule 15(c) applies, it may make an amended pleading "timely even though it was filed outside an applicable statute of limitations [period]." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

A plaintiff has ninety days from receipt of a right-to-sue letter from the EEOC to file a Title VII lawsuit. 42 U.S.C. § 2000e-5(f)(1); *see also Houston v. Sidley & Austin*, 185 F.3d 837, 838–39 (7th Cir. 1999). United argues that Seventh Circuit precedent precludes applying the relation back doctrine. *See Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002) (noting relation back doctrine was inapplicable where dismissal of an initial habeas corpus petition left nothing for the new petition to relate back to); *Elmore v. Henderson*, 227 F.3d 1009, 1011 (2000) ("[I]f the suit is dismissed without prejudice, meaning that it can be refiled, then the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing.").

Plaintiffs' Title VII claims are not time-barred. Though "[a] suit dismissed without prejudice is treated for statute of limitations purposes as if it had never been filed," *Elmore*, 227 F.3d at 1011, "[t]he simple dismissal of a complaint does not terminate the litigation," *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1020 (7th Cir. 2013). As the Seventh Circuit clarified in *Luevano*, application of the relation back doctrine requires

determining whether an order of dismissal serves as a final judgment that dismisses the entire action or whether it only dismisses the complaint. *Id.* at 1026 (noting that if "[t]he timely-filed case remain[s] pending . . . plaintiff could amend her complaint to address the problems found by the district court"). To determine "the potential finality of an order," a court "may analyze not only the text of the order but also [its] behavior." *Id.* "When a district court grants a plaintiff leave to amend his pleading, the court signals that the action has not been fully and finally adjudicated on the merits and that further proceedings will follow." *Id.* (alterations accepted) (citation and quotation marks omitted).

The clear language of the Court's prior order shows that the Court contemplated a possible further amendment of the complaint and thus that the action was not fully and finally adjudicated. *See Engstrom*, 2024 WL 3848512, at *12 ("*Unless* the plaintiff files, by August 26, 2024, a motion for leave to amend that attaches a proposed amended complaint stating at least one viable claim over which the Court has jurisdiction, the Court *will enter* judgment in favor of the defendants.") (emphases added).

Accordingly, plaintiffs' Title VII claims relate back to the date of their original pleading, as they rely on the same information that formed the basis of the FCRA violations, i.e., "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

## B.     Leave to amend

As indicated, the plaintiffs did not assert Title VII claims against United in any of the earlier versions of their complaint. For the first two versions of the complaint, this is

easily explainable: the plaintiffs' EEOC charges against United were still pending, so they had not exhausted the administrative process. The absence of any Title VII claims in the second amended complaint is not so easy to explain: the plaintiffs received notices of right to sue from the EEOC on December 20, 2023, forty days before they filed their second amended complaint on January 30, 2024. Thus the plaintiffs easily could have asserted their Title VII claims in the second amended complaint.

In its response to the motion for leave to amend, United took the plaintiffs to task for not adding the Title VII claims in their second amended complaint. The plaintiffs made no effort to provide an explanation in their reply brief, so the Court asked their counsel at the hearing on the motion. Counsel's answer was that his clients had preferred to proceed under the FCRA rather than Title VII. He did not elaborate initially, but when pressed by the Court, counsel indicated that the reason was that greater remedies are available under the FCRA—specifically, the FCRA has no cap on compensatory damages.

Counsel's belated explanation—given only after the plaintiffs had forfeited the point but were nonetheless asked by the Court for an explanation—is less than satisfactory. Honestly, it does not hold water: the plaintiffs *did* include in their complaint other alternative claims for relief which carry lesser remedies than those available under the FCRA. In particular, common-law torts, unlike the FCRA, do not allow for shifting of attorney's fees. *See Marek v. Chesny*, 473 U.S. 1, 8 (1985) (noting that in the American legal system, a litigant is responsible for its own attorney's fees unless an exception applies and that "most of the exceptions were found in federal statutes that directed courts to award attorney's fees as part of the costs in particular cases").

7

That aside, in the Court's experience both as a practicing lawyer and on the bench, it is *the norm* for plaintiffs to include alternative causes of action that provide separate routes to a similar result.[1]  In the present case, there was and is absolutely no sound reason for plaintiffs not to include parallel Title VII claims against United in their second amended complaint, particularly when they asserted such claims against ALPA. They and their lawyers certainly were aware at the time that such claims were available: they had asserted them before the EEOC and had received a notice of right to sue; and the Title VII claims track their FCRA claims against United in the same complaint

Plaintiffs contend that delay alone is insufficient grounds to deny leave to amend and cite to *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787 (7th Cir. 2004), to support this premise.  The court in *Dubicz* does state that "delay by itself is normally an insufficient reason to deny a motion for leave to amend."  *Id*. at 793.  "Delay must be coupled with some other reason," such as "prejudice to the non-moving party."  *Id.* Plaintiffs assert that United faces no prejudice from the assertion of the new claims because it is already aware of the relevant underlying facts and contentions.

This argument is unpersuasive.  Plaintiffs received their right-to-sue notices from the EEOC over a month before filing their SAC, in which they failed to include Title VII

---

[1] There are, of course, exceptions.  One might be a state court plaintiff in a case without diversity of citizenship who omits parallel federal claims to avoid removal to federal court.  Another might be a case in which the plaintiff does not (or does not yet) have an EEOC right-to-sue notice for her federal discrimination claims but the parallel state statute has no administrative exhaustion requirement.  In the latter situation, there is a completely legitimate basis to start off with the state law claims only and add the federal claims later.  But nothing like this happened here:  as indicated earlier, the plaintiffs had their EEOC notices nearly a month and a half before they filed their second amended complaint, in which they rather glaringly omitted any Title VII claims against United while asserting such claims against ALPA.

claims against United while asserting such claims against ALPA.  Plaintiffs then waited

five months past the limitations period for bringing Title VII claims before they sought

leave to amend to add those claims.  That plaintiffs waited this long, failed to properly

assert any justification for the delay until pressed by the Court, and then supplied a

wholly insufficient justification, shows both undue (and unjustified) delay and prejudice.

It is unfair to United to have to defend over a two-year period against serial complaints

in which plaintiffs essentially pull out of a grab bag whatever claims seem most

convenient at the time.  Accordingly, the Court is well within the standard articulated by

the court in *Dubicz* to deny leave to amend here, and the Court does deny leave to

amend.

## C.      Title VII claims

Even if the foregoing did not provide a sufficient basis to deny plaintiffs leave to

amend, denial of plaintiffs' motion would still be appropriate, because the proposed

amendment would be futile.  Specifically, in their proposed third amended complaint,

plaintiffs do not provide the requisite "push" to make their claims plausible.  *See*

*O'Boyle*, 910 F.3d at 348.

In their proposed third amended complaint, Engstrom and Shaw assert claims

under Title VII for intentional discrimination (i.e., disparate treatment), failure to

accommodate, and disparate impact.  *See* Mot. for Leave to File Am. Compl., Ex. B at

24–29.  The Supreme Court has classified an employer's failure to accommodate as a

type of disparate treatment claim, see *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575

U.S. 768, 775 (2015), but because plaintiffs have asserted both theories the Court will

analyze them as alternative arguments.

9

### 1.    Discrimination and failure to accommodate

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment."  42 U.S.C. § 2000e-2(a)(1).  "To show discriminatory intent under Title VII, a plaintiff must demonstrate that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects on an identifiable group." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012).  A *prima facie* religious discrimination claim, including a claim of failure to accommodate, requires a plaintiff to plausibly allege that "(1) the observance, practice, or belief conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance, practice, or belief to the employer's attention; and (3) the religious observance, practice, or belief was the basis for the employee's discriminatory treatment."  *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1009 (7th Cir. 2024).

"Courts should not undertake to dissect religious beliefs."  *Thomas v. Rev. Bd. of the Ind. Emp. Sec. Div.*, 450 U.S. 707, 715 (1981).  But the Seventh Circuit has made clear that "[a]t the pleading stage, an employee seeking an accommodation in the form of an exemption from an employer's vaccine mandate must allege facts *plausibly permitting* an inference that some 'aspect[]' of the request is based on the employee's 'religious observance and practice' or 'belief.'"  *Passarella*, 108 F.4th at 1009 (emphasis added) (quoting 42 U.S.C. § 2000e(j)).  In other words, "[a]pplying the statutory language necessarily requires an exercise of judgment" in which courts make a "holistic assessment of the terms of the employee's exemption request, with the controlling

10

inquiry at the pleading stage being whether the employee *plausibly* based [his] vaccination exemption request at least in part on an aspect of [his] religious belief or practice."  *Id.* (emphasis added).  At bottom, then, though the Court may not probe plaintiffs' religious beliefs as described in the proposed third amended complaint, plaintiffs must still meet the threshold requirement of plausibly alleging what those religious beliefs are and how they make the requested accommodation one that is based on the employee's religious observance, practice, or belief.

Plaintiffs fail to clear even this modest threshold.  The proposed third amended complaint contains bare, conclusory statements that "[p]laintiffs are each Christian with sincerely held religious beliefs" and that "United discriminated against Plaintiffs because of their expressed sincerely held religious beliefs, religious observance, and practice of refusing the COVID-19 vaccine."  Mot. for Leave to File Am. Compl., Ex. B ¶¶ 137, 154. In other instances, plaintiffs do nothing more than substitute words in a way that does not make their allegations more plausible.  *See id.*, Ex. B ¶ 103 (changing the phrase "Christian beliefs" to "religious beliefs").  The only instance where plaintiffs even attempt to meet the pleading standard articulated above is via statements in their charges of discrimination filed with the EEOC, which they attach to their complaint.  In these charges, both plaintiffs allege:

> The Holy Spirit is how God communicates with me and answers my prayers. Although there are several reasons for which the COVID-19 vaccine is contrary to my sincerely held religious beliefs, the one which is most easily explained for purposes of this charge is that after prayer, God, through the Holy Spirit, answered my prayers by placing it upon my heart and conscience to not take the Covid-19 vaccine.

*Id.*, Ex. B at 32, 34.

Stating that there are several reasons, but failing to articulate them, is not

11

sufficient to plausibly allege sincerely held religious beliefs to bring a Title VII claim. The Supreme Court has stated that "the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interest." *Wisconsin v. Yoder*, 406 U.S. 205 (1972). Allowing plaintiffs to continue forward with their Title VII claims based on the barebones allegations contained in the complaint runs afoul of the Supreme Court's reasoning in *Yoder*. Individualized prayer, without more, is insufficient to plausibly allege a religious tenet that conflicts with the vaccine requirement such that it supports Title VII violations based on sincerely held religious beliefs. *See Passarella*, 108 F.4th at 1009. The Court concludes that plaintiffs' proposed Title VII claims for discrimination and failure to accommodate would be futile.

    **2.    Disparate impact**

Plaintiffs' disparate impact claim fails for the same reason just discussed: they have not plausibly alleged that they are part of a protected religious class that suffered discriminatory impact. Even without this, however, the disparate impact claim falls short of the mark. To establish a *prima facie* case of disparate impact, "plaintiff[s] must produce evidence that an employment practice results in observed statistical disparities, as well as establish causation with statistical evidence of a kind and degree sufficient to show that the practice in question has caused the [alleged disparity] because of their membership in a protected group." *Chi. Tchrs. Union v. Bd. of Educ.*, 14 F.4th 650, 655 (7th Cir. 2021) (citation and quotation marks omitted). At this point, of course, the Court assesses only the sufficiency of plaintiffs' pleading and whether it clears the plausibility threshold.

12

To meet their burden, plaintiffs supply purported statistics to the effect that "2,211 [United] employees were placed on unpaid leave" due to accommodation requests for exemption of the COVID-19 vaccine mandate. Mot. for Leave to File Am. Compl., Ex. B ¶ 44. But as plaintiffs acknowledge, these 2,211 employees represent both medical and religious-based accommodations. *Id.* at 6. Plaintiffs further concede that "[m]edical reasons without a showing of disability do not form the basis of a protected category." *Id.*

Plaintiffs' proposed claim fails for one simple reason: it does not allege or identify any statistical or other evidence that the vaccine policy had a disparate impact upon those who were unvaccinated for religious reasons as compared with those who were unvaccinated for reasons unrelated to religion. United employees who sought a medical exemption are not members of a protected class under Title VII. And the 2,211 employees mentioned above were all effected the same way, regardless of whether they sought an exemption for medical or religious reasons: they were placed on unpaid leave. Thus plaintiffs' statistical "evidence," which is all they cite, does not plausibly indicate a disparate impact based on an employee's religious beliefs. *See Roberts v. City of Chicago*, 817 F.3d 561, 566 (7th Cir. 2016) (affirming dismissal of ADA disparate impact claims because plaintiffs failed to provide "factual content . . . tending to show . . . statistically significant disparities between disabled and non-disabled applicants" (citation and quotation marks omitted)). Thus, plaintiffs' proposed disparate impact claim is just as futile as their other proposed Title VII claims against United.

## Conclusion

Plaintiffs have now had four opportunities to attempt to state viable claims

13

against United.  They have failed to do so.  At this point, plaintiffs are not entitled to yet another do-over.  *See, e.g.*, *Bank of America, N.A. v. Knight*, 725 F.3d 815, 819 (7th Cir. 2013) ("Rule 15(a) says that a party may amend its complaint once as a matter of course.  After that, leave to amend depends on persuading the judge that an amendment would solve outstanding problems without causing undue prejudice to the adversaries."); *A.E. v. Mitchell*, 724 F.2d 864, 868 (10th Cir. 1983) (finding that district court did not abuse its discretion in denying leave to amend "after plaintiff had amended their complaint three times" because "leave to amend is to be given freely, but this does not mean that it can go on indefinitely").  *See also Shall v. Henry*, 211 F.2d 226, 231 (7th Cir. 1954) (finding that district court did not abuse its discretion in denying leave to amend when "[p]laintiff had five chances to state his case" and noting that "[t]here must be an end sometime to applications to amend").  The Court denies plaintiffs' motion for leave to file a third amended complaint [dkt. no. 87] and directs the Clerk to enter judgment dismissing this case with prejudice.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  December 10, 2024

14